STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ROSS WEINGARTEN (NYBN 5236401)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Ross.weingarten@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19-00054-02 RS |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| LUIS MANUEL AMADOR, | Date: April 26, 2022 |
| Defendant. | Time: 9:30 a.m. |
| | Hon. Richard Seeborg |

## I. INTRODUCTION

From at least February to November 2018, Luis Amador and others participated in a conspiracy to distribute large quantities of methamphetamine and other narcotics. Amador was a broker and runner for the conspiracy. He worked with his co-defendant, Emanuel Rivera, who was his boss and the supplier for the conspiracy. Together, they sold large quantities of drugs to customers, who they believed would then sell the same drugs to other customers and eventually to drug users in our community. As part of the conspiracy, Amador participated in at least four separate, large-quantity methamphetamine transactions. Specifically, Amador introduced Rivera to the customer, and then

would take instructions from Rivera and place narcotics in hidden locations for the customer to find. Sometimes, Amador would also collect payment for the drugs and return the money to Rivera.

Amador pled guilty to two counts of the Indictment, one of which carries a 120-month mandatory minimum sentence. Because Amador is safety-valve eligible and truthfully debriefed with the government, he is not subject to that mandatory minimum. The parties and Probation are in agreement that the Total Offense Level is 26, Criminal History Category is II, yielding an advisory Guidelines range of 70-87 months' imprisonment. Probation recommends a sentence of 24 months imprisonment. Given the length of the conspiracy and the significant amount of narcotics distributed, the government does not believe that sentence to be sufficient. The government believes that a 51 month sentence – which represents the low-end of the applicable Guidelines range after a three-level downward variance – is an appropriate sentence taking into account the relevant the 3553(a) factors. Therefore, the government recommends a sentence of 51 months in custody, to be followed by three years of supervised release and a $200 special assessment.

## II. DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The statute sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. A sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment to the offender, deter the defendant and others from committing similar crimes in the future and protect the community from future crimes of the defendant. 18 U.S.C. § 3553(a)(2). The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). In

this case, the applicable guidelines range is 70-87 months. The government believes that a sentence of 51 months achieves the goals of sentencing set forth in §3553(a).

By his own admissions, Luis Amador was a major player in a sizable drug conspiracy for approximately one year. Amador's role in the DTO was to find customers for Rivera and then help monitor and effectuate deals for large amounts of methamphetamine.

As part of the methamphetamine conspiracy, Amador participated in at least four significant transactions. In February 2018, he connected Rivera to a customer (who was, in fact, a confidential source ("CS") working for law enforcement) to purchase one kilogram of methamphetamine for $6,900. That deal took place on February 28, 2018, when Rivera instructed another co-defendant, Manuel Islas, to deliver the kilogram of methamphetamine to a customer outside of an auto body shop in South San Francisco. Amador worked at the auto body shop, and monitored the transaction as it occurred.

On May 1, 2018, the CS again approached Amador expressing an interest in purchasing a kilogram of methamphetamine. Amador connected the CS to Rivera, and Rivera personally delivered one kilogram of methamphetamine to the CS's friend, who was in fact an undercover officer ("UC"), for the negotiated price of $6,700.

On June 21, 2018, Rivera arranged for the sale of another kilogram of methamphetamine to the same customer for $6,700. He instructed an associate to deliver a vehicle containing the methamphetamine under the front passenger seat. Once the associate delivered the vehicle to the agreed-upon location, outside of the same auto body shop, Rivera instructed the customer to retrieve the methamphetamine from under the front passenger seat. Amador was in the shop during the transaction monitoring the goings on. As part of this transaction, Rivera agreed that the customer could pay him for the methamphetamine the next day, June 22, 2018. On that day, Amador was supposed to pick up the money but was not at the Pacific Auto Body Shop, so Rivera arranged for the customer to leave the money with co-defendant Franklin Quiros at his place of work, in San Bruno, California. Rivera also sent Amador to Quiros's place of work to observe the exchange of money between the customer and Quiros.

On November 6, 2018, Rivera sold one pound of methamphetamine to the UC on November 8, 2018 for $3,300. Rivera instructed an associate to deliver a vehicle containing the methamphetamine to

the auto body shop.  Inside the vehicle, secreted in an anti-freeze container, was one pound of methamphetamine.  Amador was at the shop when the vehicle arrived, and Rivera instructed him to move the anti-freeze container from the back of the vehicle and place the container in the front passenger side of the vehicle, which Amador did.  Rivera also instructed Amador to leave the vehicle door unlocked, and then instructed the customer to retrieve the methamphetamine, secreted in an anti-freeze container, from the vehicle, and to leave the cash payment for the methamphetamine in the vehicle.  After the transaction, Amador confirmed for me that the money for the transaction was in the vehicle.

The Court must consider the purposes of sentencing here – including both punishment and deterrence.  The defendant was an important part of a major narcotics conspiracy that lasted for the better part of a year.  As described above, Amador connected Rivera with at least one customer (the CS) and helped monitor and effectuate drug transactions.  His conduct gravely compromised the health and safety of the community, and presented a danger that must be prevented.  Amador is responsible for well over a kilogram of methamphetamine.  If those drugs had reached the streets, they would have provided thousands of personal uses of dangerous and deadly drugs to customers.  Moreover, narcotics transactions—particularly those that involve large amounts of drugs and high dollar amounts—inevitably invite violence.  While there is no allegation in this case that Amador or any of his co-defendants used weapons, threats, or intimidation to deal narcotics, that danger is always present in situations like the ones Amador fostered.

A sentence of 51 months is appropriate when considering the sentences already imposed by this Court in this case. Manuel Islas was sentenced to 14 months in prison, but his role was confined solely to delivering drugs on Rivera's behalf, and he did not arrange drug deals or introduce Rivera to potential customers as Amador did.  Efren Contreras was sentenced to 18 months in prison, and while Contreras did orchestrate a narcotics deal himself, it was for one ounce of methamphetamine.  As described above, Amador is responsible for selling considerably more than Contreras.  Salak was sentenced to 14 months for picking up a kilogram of cocaine from Rivera.  This defendant, on the other hand, introduced Rivera to at least one drug customer and was part of multiple transactions.[1]

---

[1] The government notes here that Rivera was sentenced to 36 months in custody, but the

On the other hand, the government acknowledges that there are important mitigating factors in this case. As a result, the government believes that a three-level downward variance to Amador's Guidelines range, leading to a Total Offense Level of 23, is appropriate. To begin, the defendant has a relatively limited criminal history, with only one adult felony conviction since 2005 (for which he was sentenced to three years' probation). Furthermore, the PSR details the challenges that Rivera had to overcome in his life. *See* PSR ¶¶ 81-109. In particular, he had a very difficult childhood, and was the victim of serious and traumatic abuse, which has led to mental health issues as an adult. Amador is also the primary caregiver for his elderly parents. Finally, Amador quickly accepted responsibility for his criminal conduct, and has performed well on pretrial release. In considering the purposes at sentencing, the defendant's quick and fulsome admission of his criminal behavior opened the door to his rehabilitation, and affects what sentence is necessary in terms of deterring future criminal conduct by this defendant. For these reasons, the government believes that a sentence at the low-end of the applicable Guidelines range after a three-level downward variance is appropriate.

### III. CONCLUSION

The defendant participated in a large and long-standing narcotics distribution conspiracy, and conducted multiple kilogram-quantity narcotics transactions for thousands of dollars. For this serious and dangerous conduct, the government asks to Court to impose a sentence of 51 months, which is sufficient, and not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a). The government also recommends the Court also impose three years of supervised release, no fine, and a $200 special assessment.

DATED: April 19, 2022                                    Respectfully submitted,

                                                         STEPHANIE M. HINDS
                                                         United States Attorney

                                                         _____/s/_____
                                                         ROSS WEINGARTEN
                                                         Assistant United States Attorney

---

government believed that a sentence far higher—given his leadership role—was appropriate. Dkt. No. 325.